UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

--------------------------------------------------------------

RÉANNA KELLY, SUNSHINE BONNET,
LAURA BLAKE, ALEXANDRA CALFE,
SHANNON PACI, SOLEIL MEISES,
DOMINIQUE WILLIAMS, ASHLEY MORA,
AMBERLY ALMONTE, JANICE CASSANOVA,
MERCEDES ORTIZ, MYALI SANCHEZ,
KATHERINE MENDEZ, FATIMA COLLINS,
NAJWA ISMAIL and LEANDRA ROYER,

                   Plaintiffs,

          v.

21 GROUP INC d/b/a SHOW PALACE
GENTLEMEN'S CLUB, ESTATE OF LAMPROS
MOUMOURIS, DOE MANAGERS 1–3 and DOES
4–10,

                Defendants.

**MEMORANDUM & ORDER**
22-CV-0226 (MKB)

21 GROUP INC d/b/a SHOW PALACE
GENTLEMEN'S CLUB,

               Counterclaimant,

          v.

RÉANNA KELLY, SUNSHINE BONNET,
LAURA BLAKE, ALEXANDRA CALFE,
SHANNON PACI, SOLEIL MEISES,
DOMINIQUE WILLIAMS, ASHLEY MORA,
AMBERLY ALMONTE, JANICE CASSANOVA,
MERCEDES ORTIZ, MYALI SANCHEZ,
KATHERINE MENDEZ, FATIMA COLLINS,
NAJWA ISMAIL and LEANDRA ROYER,

             Counterclaim-Defendants.

--------------------------------------------------------------

MARGO K. BRODIE, United States District Judge:

Plaintiff RéAnna Kelly commenced the above-captioned action on January 14, 2022, against Defendants 21 Group, Inc. doing business as Show Palace Gentlemen's Club, Lampros Moumouris, Doe Managers 1–3, and Does 4–10, alleging Defendants failed to pay Kelly minimum wages for hours worked, and failed to pay tipped employees, in violation of the Fair Labor Standards Act, 29 U.S.C. § 201 *et seq.* ("FLSA").  (Compl., Docket Entry No. 1.)  On March 15, 2022, Kelly and additional Plaintiffs Sunshine Bonnet, Laura Blake, Alexandra Calfe, Shannon Paci, Soleil Meises, Dominique Williams, Ashley Mora, Amberly Almonte, Janice Cassanova, Mercedes Ortiz, Myali Sanchez, Katherine Mendez, Fatima Collins, Najwa Ismail and Leandra Royer filed an Amended Complaint against Defendants, alleging the FLSA claims and also alleging violations of the New York Labor Law §§ 190 *et seq.* and 650 *et. seq.* ("NYLL").[1]  (Am. Compl., Docket Entry No. 22.)

On April 28, 2022, Defendants filed their Answer, and 21 Group, Inc. ("21 Group") and the Estate of Lampros Moumouris (together "Affirmative Defense Defendants") filed fifty-two affirmative defenses against all Plaintiffs / Counterclaim-Defendants.  (Affirmative Defenses, Docket Entry No. 28.)  21 Group also filed "compulsory" counterclaims against Plaintiffs / Counterclaim-Defendants.  (Answer, Docket Entry No. 28.)  In addition, 21 Group alleged counterclaims of legal requirement to remit entertainment fees/conversion/restitution; breach of contract; fraud in the inducement; quantum meruit and unjust enrichment; innocent misrepresentation; constructive trust; promissory estoppel; specific performance of accounting of tip income and accounting of entertainment fees (the "Compulsory Counterclaims").  (Compulsory Counterclaims ¶¶ 42–101, Docket Entry No. 28.)

---

[1] Plaintiffs initially brought the Complaint against Lampros Moumouris, but the Amended Complaint is brought against the Estate of Lampros Moumouris.

On June 15, 2022, Plaintiffs / Counterclaim-Defendants filed a motion to strike Defendants' affirmative defenses, and on July 21, 2022, 21 Group filed an opposition to Plaintiffs / Counterclaim-Defendants' motion.[2]  For the reasons set forth below, the Court grants in part and denies in part Plaintiffs / Counterclaim-Defendants' motion to strike the affirmative defenses.

## I.    Background

The Court assumes the truth of the factual allegations in the Amended Complaint for the purpose of deciding Plaintiffs / Counterclaim-Defendants' motion to strike.

Plaintiffs / Counterclaim-Defendants were employed by Defendants as professional entertainers or exotic dancers who performed on the premises of 21 Group, doing business as Show Palace Gentlemen's Club, "an adult-oriented entertainment facility" located at 49-09 25th Avenue, Woodside, New York (the "Club"). (Am. Compl. ¶¶ 11–12, 24, 27–42.)  Lampros Moumouris was the owner and controlling shareholder of Show Palace and exerted day to day management over the nightclub.[3]  (*Id.* ¶ 13.)  Doe Managers 1–3 are managers and owners who control and enforce the employment policies at Show Palace.  (*Id.* ¶ 14.)

Plaintiffs / Counterclaim-Defendants allege that the Defendants were "employer(s)" or "joint employer(s)" of Plaintiffs / Counterclaim-Defendants.  (*Id.* ¶ 24.)   Since 2016, Defendants

---

[2]  (Pls.' / Counterclaim-Defs.' Mot. to Strike ("Pls.' Mot."), Docket Entry No. 38; Defs.' Opp'n to Pls.' Mots. ("Defs.' Opp'n"), Docket Entry No. 42; Pls.' Reply in Supp. of Pls.' Mot. ("Pls.' Reply"); Docket Entry No. 43.)

On June 15, 2022, Plaintiffs / Counterclaim-Defendants also filed a motion to dismiss Defendants' counterclaims.  (Pls.' / Counterclaim-Defs.' Mot. to Dismiss Counterclaims, Docket Entry No. 37; Pls.' / Counterclaim-Defs.' Reply in Supp. of Counterclaim-Defs.' Mot., Docket Entry No. 43; 21 Group's Opp'n to Counterclaim-Defs.' Mot., Docket Entry No. 42.).  The Court addressed Plaintiffs/ Counterclaim-Defendants' motion to dismiss in its March 31, 2023 decision ("March 2023 Decision").  (Mar. 2023 Decision, Docket Entry No. 60.)

[3]  Moumouris passed away in December of 2021.  (Am. Compl. ¶ 13.)

categorized all "dancers/entertainers" employed by them as "independent contractors" and allegedly "failed and refused to pay wages" to them. (*Id.* ¶ 25.)

Plaintiffs / Counterclaim-Defendants worked and performed at the adult-oriented entertainment facilities multiple shifts per week and were an integral part of Defendants' business which operated solely as an adult-oriented entertainment facility. (*Id.* ¶ 45.) Plaintiffs / Counterclaim-Defendants allege that Defendants did not pay dancers/entertainers on an hourly basis but exercised significant control over Kelly during her shifts and demanded that Plaintiffs / Counterclaim-Defendants work certain days and told them at what time they were permitted to leave. (*Id.* ¶¶ 46–47.) Defendants "controlled the means and manner in which Plaintiffs could perform," and had the authority to, and actually did, "suspend, fine, fire, or otherwise discipline entertainers for non-compliance" with the rules regarding dancing. (*Id.* ¶¶ 51–53.) Defendants also allegedly exercised significant control over Plaintiffs / Counterclaim-Defendants through written and unwritten policies and procedures. (*Id.* ¶ 58.)

Plaintiffs / Counterclaim-Defendants were "compensated exclusively through tips from Defendants' customers," and Defendants "required Plaintiffs to share their tips with Defendants and other non-service employees who do not customarily receive tips, including the managers, disc jockeys, and the bouncers." (*Id.* ¶¶ 55–56.) Defendants allegedly "made all hiring decisions regarding wait staff, security, entertainers, managerial and all other employees on the premises." (*Id.* ¶ 61.)

Plaintiffs / Counterclaim-Defendants allege that Defendants need dancers/entertainers to successfully and profitably operate the Show Palace. (*Id.* ¶ 64.) The position of dancer/entertainer, according to Plaintiffs / Counterclaim-Defendants, "requires no managerial skill[s]," and "requires little other skill or education, formal or otherwise." (*Id.* ¶¶ 65–66.) The

only requirements to become a dancer/entertainer at Show Palace are "physical attributes" and the "ability to dance seductively." (*Id.* ¶ 67.) Defendants did not require prior experience as an entertainer or any formal dance training as a job condition or prerequisite to employment. (*Id.*)

Defendants allegedly failed to maintain records of "wages, fines, fees, tips and gratuities and/or service charges paid or received by dancers/entertainers." (*Id.* ¶ 68.) Defendants also failed to maintain and furnish wage statements to Plaintiffs / Counterclaim-Defendants. (*Id.* ¶ 88.) Plaintiffs / Counterclaim-Defendants were "not paid an hourly minimum wage or any hourly wage or salary despite being present at Defendants' facility and required to work and entertain its customers at any time during an eight-plus (8+) hour work shift." (*Id.* ¶ 69.) In addition, Plaintiffs / Counterclaim-Defendants were "not paid overtime wages" for shifts lasting longer than eight hours, were "not paid an hourly minimum wage" for the typical half hour of time expended prior to each shift to get ready for work to comply with Defendants' dress and appearance standards, and "were not paid an hourly minimum wage for the time they were required to wait at Show Palace until the premises and the parking lot" were cleared. (*Id.* ¶¶ 70–72.)

Plaintiffs / Counterclaim-Defendants allege that Defendants violated "the FLSA's tipped-employee compensation provision, 29 U.S.C. § 203(m), which requires employers to pay a tipped employee a minimum of $2.13 per hour" and Defendants also violated section § 203(m) when they "failed to notify Plaintiffs about the tip credit allowance (including the amount to be credited) before the credit was utilized." (*Id.* ¶ 57.) Defendants "never paid" Plaintiffs / Counterclaim-Defendants "any amount as wages whatsoever," and instead, allegedly, "required Plaintiffs . . . to pay them for the privilege of working." (*Id.* ¶ 75.)

## II.   Discussion

### a.   Standard of review

Rule 12(f) of the Federal Rules of Civil Procedure provides that "[t]he court may strike from a pleading an insufficient defense or any redundant, immaterial, impertinent or scandalous matter." Fed. R. Civ. P. 12(f).  Motions to strike are generally disfavored and will not be granted "unless it appears to a certainty that plaintiffs would succeed despite any state of the facts which could be proved in support of the defense." *Coach, Inc. v. Kmart Corps.*, 756 F. Supp. 2d 421, 425 (S.D.N.Y. 2010) (quoting *Salcer v. Envicon Equities Corp.*, 744 F.2d 935, 939 (2d Cir. 1984), *vacated and remanded on other grounds*, 478 U.S. 1015 (1986)); *see also State of New York v. United Parcel Serv., Inc.*, 160 F. Supp. 3d 629, 637 (S.D.N.Y. 2016) ("Motions to strike are generally disfavored." (quoting *Mayfield v. Asta Funding, Inc.*, 95 F. Supp. 3d 685, 696 (S.D.N.Y. 2015))); *Walters v. Performant Recovery, Inc.*, 124 F. Supp. 3d 75, 78 (D. Conn. 2015) ("Motions to strike are generally disfavored, but are within the district court's sound discretion." (quoting *Lamoureux v. AnazaoHealth Corp.*, 250 F.R.D. 100, 102 (D. Conn. 2008))).

A court may strike a defense as insufficient where "(1) there is no question of fact which might allow the defense to succeed; (2) there is no question of law which might allow the defense to succeed; and (3) the plaintiff would be prejudiced by the inclusion of the defense." *Sibley v. Choice Hotels Int'l, Inc.*, 304 F.R.D. 125, 132 (E.D.N.Y. 2015) (citation omitted); *see also United Parcel Serv., Inc.*, 160 F. Supp. 3d at 637; *Coach, Inc.*, 756 F. Supp. 2d at 425.  The first two prongs of this test "examine the legal sufficiency of the asserted defense." *Walters*, 124 F. Supp. 3d at 78 (citing *Coach, Inc.*, 756 F. Supp. 2d at 425).  "This is 'to be determined solely upon the face of the pleading.'" *Id.* (quoting *Coach, Inc.*, 756 F. Supp. 2d at 425).

The Second Circuit has made clear that "the plausibility standard of *Twombly* applies to determining the sufficiency of all pleadings, including the pleading of an affirmative defense, but with recognition that, as the Supreme Court explained in *Iqbal*, applying the plausibility standard to any pleading is a 'context-specific' task." *GEOMC Co., Ltd. v. Calmare Therapeutics Inc.*, 918 F.3d 92, 96 (2d Cir. 2019) (citing *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009)). The Second Circuit further explained that:

> The key aspect of the context relevant to the standard for pleading an affirmative defense is that an affirmative defense, rather than a complaint, is at issue. This is relevant to the degree of rigor appropriate for testing the pleading of an affirmative defense. The pleader of a complaint has the entire time of the relevant statute of limitations to gather facts necessary to satisfy the plausibility standard. By contrast, the pleader of an affirmative defense has only the 21-day interval to respond to an original complaint, the 21-day interval to amend, without court permission, an answer that requires a responsive pleading, or the 14-day interval to file a required response to an amended pleading that makes a new claim. That aspect of the context matters. In addition, the relevant context will be shaped by the nature of the affirmative defense. For example, the facts needed to plead a statute-of-limitations defense will usually be readily available; the facts needed to plead an ultra vires defense, for example, may not be readily known to the defendant, a circumstance warranting a relaxed application of the plausibility standard.

*Id.* at 98 (citations and footnote omitted).

In addition, the Second Circuit has endorsed the view that "[e]ven when the defense presents a purely legal question, the courts are very reluctant to determine disputed or substantial issues of law on a motion to strike; these questions quite properly are viewed as determinable only after discovery and a hearing on the merits." *Salcer*, 744 F.2d at 939 (quoting 5 Charles Alan Wright & Arthur R. Miller, Fed. Practice & Proc. § 1381 at 800–01); *see also Penn-Star Ins. Co. v. FPM Realty LLC*, No. 21-CV-975, 2022 WL 1085320, at *2 (E.D.N.Y. Feb. 24, 2022), *report and recommendation adopted as modified*, 2022 WL 969727 (E.D.N.Y. Mar. 31, 2022) (same).

"If a court determines that a defense is legally insufficient, the court must next determine whether inclusion of the defense would prejudice the plaintiff." *Coach, Inc.*, 756 F. Supp. 2d at 425–26. "Increased time and expense of trial may constitute sufficient prejudice to warrant striking an affirmative defense." *Id.* at 426 (citing *Estee Lauder, Inc. v. Origins Nat. Res., Inc.*, 189 F.R.D. 269, 271 (S.D.N.Y. 1999)). Moreover, inclusion of a defense that will fail as a matter of law prejudices the plaintiff by needlessly increasing the duration and expense of the litigation. *Id.*; *Estee Lauder*, 189 F.R.D. at 272 (explaining that when "the defense is insufficient as a matter of law, the defense should be stricken to eliminate the delay and unnecessary expense from litigating the invalid claim" (citation omitted)).

### b. The Court grants in part and denies in part Plaintiffs / Counterclaim-Defendants' motion to strike the affirmative defenses

Plaintiffs / Counterclaim-Defendants argue that the Court should strike the affirmative defenses[4] because they are "insufficient as a matter of law, or as a matter of pleading, to the claims advanced in this lawsuit." (Pls.' Mot. 1.) In addition, Plaintiffs / Counterclaim-Defendants argue that "expending time and effort to conduct discovery on insufficiently plead and improper defenses, which meet *both* the standards of insufficiency and prejudice, establishes their inherently prejudicial nature." (Pls.' Reply 3 (emphasis omitted).)

Affirmative Defense Defendants argue that Plaintiffs / Counterclaim-Defendants' motion fails as a matter of law because "Plaintiffs only argue that certain affirmative defenses fail to meet the pleading standard but make no argument as to irrelevance or prejudice." (Defs.' Opp'n 8.) In addition, Affirmative Defense Defendants argue that Plaintiffs / Counterclaim-

---

[4] Plaintiffs argue that the Court should strike fifty-one of the fifty-two affirmative defenses. The only affirmative defense that is not addressed is the affirmative defense asserting that "[t]o the extent Plaintiffs [were] . . . employee[s] . . . the [Amended Complaint] is barred . . . because Plaintiffs seek[] to recover wages for work that Defendants did not suffer or permit [them] to perform," (affirmative defense thirty). (Affirmative Defenses ¶ 30.)

Defendants' motion to strike "fails to account for the facts pled in support of 21 Group's counterclaims and fails to account for the unique circumstances of an asserted FLSA collective action, where individuals continue to join the action after [Affirmative Defense] Defendants' affirmative defenses have been submitted." (*Id.* at 9.)

The Court jointly discusses similar defenses.[5]

### i.   The parties' arguments for and against the motion to strike

#### 1.   Affirmative defenses one through four, seven, eight, nineteen, thirty-one, thirty-three, and forty-two[6]

Plaintiffs / Counterclaim-Defendants argue that affirmative defenses one through four, seven, eight, nineteen, thirty-one, thirty-three, and forty-two are improper affirmative defenses because they are "negative defenses." (Pls.' Mot. 4.) These affirmative defenses are: failure to state claims (affirmative defense one); lack of subject matter jurisdiction (affirmative defense two); unauthorized claims under the agreement to arbitration, (affirmative defense three); Plaintiffs' performances are not covered by FLSA or the NYLL, (affirmative defense four); Plaintiffs are not employees, (affirmative defenses seven and eight); "Plaintiffs' claim[s] for liquidated and/or punitive damages [are] barred," (affirmative defense nineteen); "the [Amended Complaint] is barred . . . because 21 Group, Inc. had no knowledge of the allegedly compensable hours worked," (affirmative defense thirty-one); "Plaintiffs' claims are barred to the extent that [they] consented to be treated as [] non-employee[s] and accepted all of the benefits of that business arrangement and structure," (affirmative defense thirty-three); and "Plaintiffs' claims

---

[5]   The parties group the affirmative defenses into three to four categories.  The Court declines to adopt this categorization of the affirmative defenses, and instead, analyzes the affirmative defenses in the categories set forth in this Memorandum and Order.

[6]   Because the Court declines to adopt the parties' categorization of the affirmative defenses, the Court recites the parties' arguments on the motion to strike before analyzing each of the affirmative defenses.

are barred because any conduct complained of against Defendants and their agents . .  was a just and proper exercise of management discretion undertaken for a fair and honest reason regulated by good faith," (affirmative defense forty-two).  (Affirmative Defenses ¶¶ 1, 2, 3, 4, 7, 8, 19, 31, 33, 42.)  In support, Plaintiffs / Counterclaim-Defendants argue that these affirmative defenses "attempt to negate elements of Plaintiffs' claims rather than preclude liability if all of Plaintiffs' claims are proven."  (Pls.' Mot. 5.)  Plaintiffs / Counterclaim-Defendants argue that permitting the affirmative defenses to remain would "confuse the issues" and they are unnecessary because Defendants have already denied the portions of Plaintiffs / Counterclaim-Defendants' Amended Complaint stating that the FLSA applies.  (*Id.*)

Affirmative Defense Defendants argue that Plaintiffs / Counterclaim-Defendants' argument consists of baldly stating that the affirmative defenses do not meet the pleading standards which is "plainly insufficient" to warrant striking the defenses.  (Defs.' Opp'n 10.)  In support, they argue that Plaintiffs / Counterclaim-Defendants do not even claim the affirmative defenses lack factual support and offer no explanation of how striking these defenses would serve the interests of the case.  (*Id.*)

### 2.  Affirmative defenses four through six, nine through eighteen, twenty through twenty-nine, thirty-two, and thirty-four through fifty-two

Plaintiffs / Counterclaim-Defendants argue that affirmative defenses four through six, nine through eighteen, twenty through twenty-nine, thirty-two, and thirty-four through fifty-two are "woefully inadequate" because they are "boilerplate, conclusory, and fail to state any facts." (Pls.' Mot. 5.)  These affirmative defenses are: Defendants' actions were undertaken in good faith (affirmative defenses five, thirty-eight, forty-two, fifty-two); Plaintiffs / Counterclaim-Defendants were not employees and did not comply with any requirements of employees (affirmative defense nine, ten, eleven, twelve, thirteen, eighteen, twenty-one, twenty-nine, thirty-

two, forty-four, forty-five, forty-seven, forty-eight, forty-nine, fifty-one); Plaintiffs / Counterclaim-Defendants' claims are barred by the statute of limitations (affirmative defenses fourteen and fifteen); Plaintiffs / Counterclaim-Defendants' claims are barred by the legal doctrines of laches (affirmative defense sixteen), payment (affirmative defense seventeen), accord and satisfaction (affirmative defense twenty-two), fraud, fraud in the inducement, unjust enrichment, and equitable estoppel (affirmative defense twenty-three), waiver (affirmative defenses twenty-five and thirty-five), avoidable consequences (affirmative defense twenty-seven), *in pari delicto* (affirmative defense twenty-eight), de minimis damages (affirmative defenses thirty-six and thirty-seven), abandonment (affirmative defense thirty-nine); Plaintiffs / Counterclaim-Defendants' own negligence or misconduct bars their claims (affirmative defenses twenty, twenty-four, twenty-six, forty, forty-one); Plaintiffs / Counterclaim-Defendants failed to mitigate damages (affirmative defense thirty-four); Plaintiffs / Counterclaim-Defendants fail to state a claim (affirmative defense forty-three); the contract between the parties bars Plaintiffs / Counterclaim-Defendants' claims (affirmative defense forty-six); and the regulations promulgated by the United States Department of Labor under the FLSA are invalid for numerous and various reasons (affirmative defense fifty).  (Affirmative Defenses ¶¶ 5, 38, 42, 52, 9–13, 18, 21, 29, 32, 44, 45, 47–49, 51, 14–17, 22, 23, 25, 35, 27, 28, 36, 37, 39, 20, 24, 26, 40, 41, 34, 43, 46, 50.)

In support of their arguments to strike, Plaintiffs / Counterclaim-Defendants argue first, that "Defendants do not describe [the] manner [in which] Plaintiffs failed to mitigate their damages, [the] manner [in which] Plaintiffs' own wrongdoing caused Defendants to draft contracts and hire dancers to work as independent contractors without paying wages, and what facts, if any, they allege satisfy their unclean hands, laches, or equitable estoppel claims."  (Pls.'

Mot. 13.)  Second, that the "general duty of Plaintiffs to mitigate damages has not been extended

to the FLSA arena." (*Id.*)  Third, that the affirmative defenses "state with absolutely zero

specificity what Defendants supposedly relied on, and zero specificity as to what Plaintiffs did or

did not do, to establish that Plaintiffs be barred from any of their claims." (*Id.*)  Fourth, that

affirmative defenses six, twenty-five, thirty-four, forty-one, and forty-six all "constitute defenses

that are rooted in impermissible waivers of Plaintiffs[ / Counterclaim-Defendants'] claims." (*Id.*)

In support, Plaintiffs / Counterclaim-Defendants rely on *Brooklyn Savings Bank v. O'Neill*, 324

U.S. 697 (1945) for the proposition that "an employee cannot waive a minimum wage or

overtime pay claim under the FLSA unless the release is supervised by a court or by the U. S.

Department of Labor." (*Id.*)  Fifth, that the sixth, twenty-fifth, thirty-fourth, forty-first, and

forty-sixth affirmative defenses all "constitute defenses that are rooted in impermissible waivers

of Plaintiffs[ / Counterclaim-Defendants'] claims." (*Id.*)

Affirmative Defense Defendants argue that as to these affirmative defenses, Plaintiffs /

Counterclaim-Defendants assert no argument that the defenses are "irrelevant or prejudicial so as

to warrant them being stricken." (Defs.' Opp'n 10.)  In support, they argue that 21 Group has

"set forth detailed factual allegations in support of its counterclaims," and that Plaintiffs /

Counterclaim-Defendants state but do not explain why certain affirmative defenses "amount to a

waiver of FLSA rights." (*Id.*)  In addition, Affirmative Defense Defendants argue that Plaintiffs

/ Counterclaim-Defendants state but do not explain why certain affirmative defenses "amount to

a waiver of FLSA rights." (*Id.*)

### ii.   Analysis of the affirmative defenses

#### 1.   First, second, and forty-third affirmative defenses

In the first, second and forty-third affirmative defenses, Affirmative Defense Defendants

argue that Plaintiffs / Counterclaim-Defendants "fail[] to state claims against the Defendants

upon which relief can be granted," (affirmative defense one); the Court "lacks subject matter jurisdiction over some or all of the claims contained in Plaintiffs' [Amended Complaint]," (affirmative defense two); and "Plaintiff[s'] [Amended Complaint] fails to state a valid claim for attorneys' fees against Defendants," (affirmative defense forty-three).  (Affirmative Defenses ¶¶ 1, 2, 43.)

The Court denies Plaintiffs / Counterclaim-Defendants' motion to strike these affirmative defenses on the grounds that they are boilerplate affirmative defenses because the defenses give Plaintiffs / Counterclaim-Defendants fair notice of the nature of the defenses and are not so legally insufficient that they should be stricken.  *See Sibley*, 304 F.R.D. at 133 (finding that "boilerplate" affirmative defenses, including that the "complaint fail[ed] to state a valid cause of action," were not so legally insufficient that they should have been stricken); *Raymond Weil, S.A. v. Theron*, 585 F.Supp.2d 473, 489–90 (S.D.N.Y. 2008) ("There is nothing dumber than a motion to strike boilerplate affirmative defenses; it wastes the client's money and the court's time.").

### 2.   Third affirmative defense

In their third affirmative defense, Affirmative Defense Defendants state that "[n]o class or collective claims are unambiguously authorized by the agreement to arbitration and are, thus prohibited."  (Affirmative Defenses ¶ 3.)  Affirmative Defense Defendants concede that this defense "is likely moot in light of the [parties'] stipulation that the matter will proceed as a collective action."  (Defs.' Opp'n 10 (citation omitted); Stip., Docket Entry No. 33.)  Therefore, the Court strikes the third affirmative defense as moot.

### 3.   Fourth, sixth through twelfth, twenty-third, thirty-first, thirty-third, and forty-fifth affirmative defenses

The Affirmative Defense Defendants assert the following affirmative defenses: (1) Plaintiffs' performances are not covered by FLSA or the NYLL, (affirmative defenses four and

six); (2) Plaintiffs / Counterclaim-Defendants' claims are "barred because the Plaintiffs never performed . . . as [employees]" and did not comply with any requirements of employees (affirmative defenses seven, eight, nine, ten, eleven, twelve, and forty-five); (3) "Plaintiffs' claims are barred by the doctrines of fraud, fraud in the inducement, unjust enrichment, and equitable estoppel," (affirmative defense twenty-three); (3) the [Amended Complaint] is barred . . . because 21 Group, Inc. had no knowledge of the allegedly compensable hours worked," (affirmative defense thirty-one); and (4) "Plaintiffs' claims are barred to the extent that [they] consented to be treated as [] non-employee[s] and accepted all of the benefits of that business arrangement and structure," (affirmative defense thirty-three).  (Affirmative Defenses ¶¶ 4, 6, 7, 8, 9, 10, 11, 12, 45, 23, 31, 33.)

Plaintiffs / Counterclaim-Defendants bear the burden of proof of demonstrating that they were employees under the FLSA and that the FLSA applies to them for their case-in-chief. Plaintiffs / Counterclaim-Defendants have failed to show that there is no question of law that might allow the defense to succeed.  As they admit, these affirmative defenses argue that Plaintiffs / Counterclaim-Defendants are not employees under the FLSA and specifically address Plaintiffs / Counterclaim-Defendants case-in-chief.  (Pls.' Mot. 13.)  Because they address the issue at the heart of the case, these affirmative defenses are not legally insufficient. *See, e.g.*, *Salcer*, 744 F.2d at 939 (finding that where a legal issue is "substantial and disputed" that it was error for the district court to strike the affirmative defenses); *Cadet v. All. Nursing Staffing of N.Y., Inc.*, No. 21-CV-3994, 2023 WL 3872574, at *3 (S.D.N.Y. Jan. 6, 2023) ("[P]roffering legal arguments in disagreement with a defendant's affirmative defense does not warrant striking the defense, particularly at this early stage in the litigation.").  Therefore, the Court denies

Plaintiffs / Counterclaim-Defendants' motion to strike the fourth, sixth through twelfth, twenty-third, thirty-first, thirty-third, and forty-fifth affirmative defenses.

### 4. Fifth, twenty-ninth, forty-seventh, and fifty-first affirmative defenses

The fifth, twenty-ninth, forty-seventh, and fifty-first affirmative defenses state: the Amended Complaint is barred because the acts or omissions complained of were undertaken in good faith and conformed with government regulations, (affirmative defense five); the Amended Complaint "is barred . . . because the hours Plaintiffs allege[] [they] worked are not 'hours worked' within the meaning of applicable law," (affirmative defense twenty-nine); "[m]andatory tip pooling is lawful under the FLSA, and any claim of the Plaintiffs predicated upon the opposite is therefore barred," (affirmative defense forty-seven); and "Plaintiffs' claims for overtime are barred under 29 U.S.C. § 207(i) and attendant regulations," (affirmative defense fifty-one).  (Affirmative Defenses ¶¶ 5, 29, 47, 51.)

In these defenses, the Affirmative Defense Defendants make legal arguments that Plaintiffs / Counterclaim-Defendants' claims are barred under the FLSA and DOL regulations. Plaintiffs / Counterclaim-Defendants' motion to strike these affirmative defense fails because they do not identify how or to what extent this affirmative defense is legally irrelevant or prejudicial to Plaintiffs / Counterclaim-Defendants.  In addition, Plaintiffs / Counterclaim-Defendants' argument to strike these affirmative defenses would require a "premature evaluation" of the merits of a defense.  *Sibley*, 304 F.R.D. at 134; *Salcer*, 744 F.2d at 939 (finding that where a legal issue is "substantial and disputed" that it was error for the district court to strike the affirmative defenses).  Therefore, the Court denies Plaintiffs / Counterclaim-Defendants' motion to strike the fifth, twenty-ninth, forty-seventh, and fifty-first affirmative defenses.

### 5. Thirteenth affirmative defense

In the thirteenth affirmative defense, Affirmative Defense Defendants state that Plaintiffs / Counterclaim-Defendants' claims are barred because they "lack[] standing to bring forth [their] claims," since "the withholdings that would be due in regard to the tip income earned by the Plaintiffs, as required by the [Internal Revenue Code ("IRC")] . . . would more than completely offset any net wages to which Plaintiffs [/ Counterclaim-Defendants] may be found to have been entitled."  (Affirmative Defenses ¶ 13.)

The Court denies Plaintiffs / Counterclaim-Defendants' motion to strike this defense because if the defense is accurate, Plaintiffs / Counterclaim-Defendants may not be able to prove "injury-in-fact," a key element of standing.  *Liu v. Democratic Nat'l Comm.*, No. 21-3021, 2022 WL 4372587, at *1 (2d Cir. Sept. 22, 2022) ("To establish Article III standing, 'a plaintiff must show (i) that he suffered an injury in fact that is concrete, particularized, and actual or imminent; (ii) that the injury was likely caused by the defendant; and (iii) that the injury would likely be redressed by judicial relief.'" (quoting *TransUnion LLC v. Ramirez*, 592 U.S. ---, ---, 141 S. Ct. 2190, 2203 (2021))).  In addition, Plaintiffs / Counterclaim-Defendants do not identify how or to what extent this affirmative defense is prejudicial to them because they are required to demonstrate that they have standing to maintain their claims.  *See Brooklyn Union Gas Co. v. Exxon Mobil Corp.*, 478 F. Supp. 3d 417, 433 (E.D.N.Y. 2020) (denying motion to strike affirmative defenses because it would not have been prejudicial for plaintiff to engage in discovery on issues that would be central to proving its claims).  Therefore, the Court denies Plaintiffs / Counterclaim-Defendants' motion to strike these affirmative defenses.

6. **Fourteenth through seventeenth, twenty-second, twenty-sixth, twenty-eighth, thirty-ninth, and forty-sixth affirmative defenses**

Affirmative Defense Defendants assert that Plaintiffs / Counterclaim-Defendants' claims are barred by the statute of limitations (affirmative defenses fourteen and fifteen), and the doctrines of laches (affirmative defense sixteen), payment (affirmative defense seventeen), accord and satisfaction (affirmative defense twenty-two), unclean hands (affirmative defenses twenty-six and forty-six), *in pari delicto* (affirmative defense twenty-eight), and abandonment (affirmative defense thirty-nine).  (Affirmative Defenses ¶¶ 14–17, 22, 26, 46, 28, 39.)  Absent a finding that there are no facts that Affirmative Defense Defendants can prove that would allow for them to succeed in showing laches, payment, unclean hands, accord and satisfaction, abandonment, and *in pari delicto*, or that Plaintiffs / Counterclaim-Defendants' claims are barred by the statute of limitations, the Court cannot grant Plaintiffs / Counterclaim-Defendants' motion as to the fourteenth, fifteenth, sixteenth, seventeenth, twenty-second, twenty-sixth, twenty-eighth, thirty-ninth, and forty-sixth affirmative defenses.  At this early stage of the proceeding, it would be premature to make such a determination.  *See Brooklyn Union Gas Co.*, 478 F. Supp. 3d at 433 (denying motion to strike affirmative defenses where it would be premature to consider whether Defendants' "waiver, estoppel, laches, unclean hands, or . . . statute of limitations" defenses were legally insufficient).

7. **Eighteenth, twentieth, twenty-first, twenty-fourth, fortieth, forty-first, and forty-eighth affirmative defenses**

The eighteenth, twentieth, twenty-first, twenty-fourth, fortieth, forty-first, and forty-eighth affirmative defenses state that Plaintiffs / Counterclaim-Defendants claims are barred for: earning and retaining "fees for entertainment services . . . far in excess of any minimum wages/overtime pay to which [they] may be found to be due if [they are] determined to have

been [] employee[s]," (affirmative defense eighteen); failure "to make restitution to 21 Group, Inc.," (affirmative defense twenty); failure to "return to 21 Group, Inc. the charges that [they] received from customers/patrons," (affirmative defense twenty-one); invoking the "detrimental reliance of 21 Group, Inc. upon the representations, agreements, actions, and material omissions of the Plaintiffs regarding the nature of [their] business relationship with 21 Group, Inc.," (affirmative defense twenty-four); "intentional misconduct of the Plaintiffs," (affirmative defense forty); "Plaintiffs' own neglect and fault in connection with the matters alleged," (affirmative defense forty-one); and "failure of consideration in that during [their] various performances [they] obtained and retained mandatory charges paid by customers/patrons," (affirmative defense forty-eight).  (Affirmative Defenses ¶¶ 18, 20, 21, 24, 40, 41, 48.)

These affirmative defenses allege that Plaintiffs / Counterclaim-Defendants engaged in misconduct, neglect, or are otherwise at fault.  The Court finds that there are questions of fact that would allow the defenses to succeed, particularly regarding whether Plaintiffs / Counterclaim-Defendants committed misconduct, neglect, or fault in connection with obtaining and retaining service charges from customers.  *See Coach, Inc.*, 756 F. Supp. 2d at 426 ("It is of no consequence, however, that there may be some unknown and hypothetical set of facts that could support these defenses.  Instead, the relevant question is whether . . . there is a question of fact or a substantial question of law that might allow any of these defenses to succeed."). Therefore, the Court denies Plaintiffs / Counterclaim-Defendants' motion to strike these affirmative defenses.

### 8.   Nineteenth, thirty-eighth, forty-second, and fifty-second affirmative defenses

Plaintiffs / Counterclaim-Defendants' motion to strike the nineteenth, thirty-eighth, forty-second, and fifty-second affirmative defenses is denied because these affirmative defenses

present unanswered questions of fact and law that the Affirmative Defense Defendants could succeed on.  These affirmative defenses state: "Plaintiffs' claim[s] for liquidated and/or punitive damages [are] barred," (affirmative defense nineteen); Defendants' actions were undertaken in good faith (affirmative defense thirty-eight); "Plaintiffs' claims are barred because any conduct complained of against Defendants and their agents, if any, was a just and proper exercise of management discretion undertaken for a fair and honest reason regulated by good faith under the circumstances," (affirmative defense forty-two); and "Plaintiffs' claims are barred and all of Defendants['] actions were taken in good faith and [were] not willful because 21 Group treated its entertainers in conformity with and modeled upon the court-approved settlement agreement in *Doe v. Deja Vu Services, Inc.*, [No. 16-CV-10877, 2017 WL 530434 (E.D. Mich. Feb. 9, 2021)]," (affirmative defense fifty-two).  (Affirmative Defenses ¶¶ 19, 38, 42, 52.)

Each affirmative defense states that Affirmative Defense Defendants acted in good faith in their actions.  There are also questions of law and fact which might allow the defense to succeed such as whether 21 Group's actions were undertaken in good faith, whether there was a reasonable basis for believing they were not in violation of the statute, and whether 21 Group willfully violated any laws.  Under the FLSA, good faith can be a valid defense for an employer to avoid liability.  *See* 29 U.S.C § 259 ("[I]f [the employer] pleads and proves that the act or omission complained of was in good faith in conformity with and in reliance on any written administrative regulation, order, ruling, approval, . . . [s]uch a defense, if established, shall be a bar to the action or proceeding . . . ."); 29 U.S.C. § 260 ("[I]f the employer shows to the satisfaction of the court that the act or omission giving rise to such action was in good faith and that he had reasonable grounds for believing that his act or omission was not a violation of the [FLSA], as amended, the court may, in its sound discretion, award no liquidated damages[.]");

*c.f. Tapia v. Blch 3rd Ave LLC*, 906 F.3d 58, 60 (2d Cir. 2018) ("Absent a showing of good faith, the FLSA provides for liquidated damages equal to unpaid wages and overtime recovered."). Therefore, there are questions of fact which might allow these affirmative defenses to succeed. *See, e.g.*, *Sibley*, 304 F.R.D. at 134 (declining to strike affirmative defense that related to factual dispute because parties had not engaged in discovery to develop the "necessary factual background"); *Serby v. First Alert, Inc.*, 934 F. Supp. 2d 506, 516 (E.D.N.Y. 2013) ("[A] defendant should be permitted to seek discovery to develop the necessary factual background for its defenses before a premature evaluation of a defense's merits." (internal quotation marks omitted)).  Accordingly, the Court declines to strike the nineteenth, thirty-eighth, forty-second, and fifty-second affirmative defenses.

### 9.   Twenty-fifth and thirty-fifth affirmative defenses

Plaintiffs / Counterclaim-Defendants argue that the sixth, twenty-fifth, thirty-fourth, forty-first, and forty-sixth affirmative defenses all "constitute defenses that are rooted in impermissible waivers of Plaintiffs' claims."  (Pls.' Mot. 13.)  These affirmative defenses state: Plaintiffs / Counterclaim-Defendants are "exempt from the protections of the FLSA and NYLL" (affirmative defense six); Plaintiffs claims are barred by the doctrine of waiver (affirmative defense twenty-five); Plaintiffs failed to mitigate damages (affirmative defense thirty-four); Plaintiffs were also negligent and at fault (affirmative defense forty-one); and "21 Group, Inc. alleges the existence of a valid and enforceable contract, which . . . Plaintiffs breached [and such breach] bars or limits [Plaintiffs] from obtaining relief," (affirmative defense forty-six). (Affirmative Defenses ¶¶ 6, 25, 34, 41, 46.)  Affirmative Defense Defendants argue that Plaintiffs / Counterclaim-Defendants state but do not explain why certain affirmative defenses "amount to a waiver of FLSA rights."  (Defs.' Opp'n 10.)

As an initial matter, the affirmative defenses identified by the Plaintiffs / Counterclaim-Defendants do not all constitute defenses that are rooted in "waivers of Plaintiffs' claims." For example, the sixth affirmative defense states that, "Plaintiffs [are] exempt from the protections of the FLSA and NYLL for numerous and various reasons, including but not limited to the fact that [they are] exempt professional entertainer[s]." (Affirmative Defenses ¶ 6.) Nothing in this defense indicates that Plaintiffs / Counterclaim-Defendants have waived claims, instead, the Affirmative Defense Defendants argue that Plaintiffs / Counterclaim-Defendants are exempt from the protections of the FLSA and NYLL based on their occupation, not because they have waived claims under the FLSA and NYLL. The Court only considers Affirmative Defense Defendants' twenty-fifth and thirty-fifth affirmative defenses based on Plaintiffs / Counterclaim-Defendants' argument that they have not waived their claims.

In the twenty-fifth affirmative defense, Affirmative Defense Defendants state that, "Plaintiffs' claims are barred by the doctrine of waiver," and in the thirty-fifth defense that "Plaintiffs' claims are barred by Plaintiffs [/ Counterclaim-Defendants] having waived the right to any recovery." (Affirmative Defenses ¶¶ 25, 35.) Plaintiffs / Counterclaim-Defendants cite to *Brooklyn Savings Bank v. O'Neill*, 324 U.S. 697 (1945) for the proposition that "an employee cannot waive a minimum wage or overtime pay claim under the FLSA unless the release is supervised by a court or by the [DOL]." (Pls.' Mot. 13.) Although parts of *Brooklyn Savings Bank* have been superseded by statute, its holding that employees may not waive the right to recover liquidated damages under the FLSA remains good law. *See Cheeks v. Freeport Pancake House, Inc.*, 796 F.3d 199, 203 (2d Cir. 2015) ("*Brooklyn Savings* . . . establish[es] that . . . employees may not waive the right to recover liquidated damages due under the FLSA . . . ."). In addition, the pleadings are devoid of any facts that would support a waiver defense because

Affirmative Defense Defendants have not made any allegations indicating that Plaintiffs / Counterclaim-Defendants waived their claims or their right to recovery. Affirmative Defense Defendants allege that they are not Plaintiffs / Counterclaim-Defendants' employers pursuant to the FLSA and NYLL, (Compulsory Counterclaims ¶ 4), but they do not provide any support for their arguments that Plaintiffs / Counterclaim-Defendants have waived their claims. Although the Court considers the plausibility of an affirmative defense with less rigor than an allegation in a complaint, *see GEOMC*, 918 F.3d at 98, the Court finds that these affirmative defenses are legally insufficient because there is no question of fact or law that might allow such a defense to succeed. *See Coach, Inc.*, 756 F. Supp. 2d at 427 (concluding that defendants' estoppel defense was insufficient as a matter of law where the pleadings were "void of any facts supporting a defense of estoppel"). In addition, because litigating whether Plaintiffs / Counterclaim-Defendants waived their claims will unnecessarily delay litigation, the Court finds that Plaintiffs / Counterclaim-Defendants would be prejudiced by permitting these affirmative defenses to proceed. *See, e.g.*, *Meisels v. Meisels*, No. 19-CV-4767, 2021 WL 1924186, at *9 (E.D.N.Y. May 13, 2021) (finding that plaintiff "would suffer prejudice" if defendants were able to raise defenses based on the validity of a contract at trial given the importance of the document to the merits of the litigation); *Specialty Mins., Inc. v. Pluess-Staufer AG*, 395 F. Supp. 2d 109, 114 (S.D.N.Y. 2005) (holding that plaintiffs would be prejudiced because inclusion of an unclean hands defense would require additional discovery and would expand the length and scope of the trial). Therefore, the Court grants Plaintiffs / Counterclaim-Defendants' motion to strike the twenty-fifth and thirty-fifth affirmative defenses asserting that "Plaintiffs' claims are barred by the doctrine of waiver," and the thirty-fifth defense that "Plaintiffs' claims are barred by

Plaintiffs [/ Counterclaim-Defendants] having waived the right to any recovery."  (Affirmative Defenses ¶¶ 25, 35.)

### 10.  Twenty-seventh, thirty-second, thirty-fourth, and forty-fourth affirmative defenses

Affirmative Defense Defendants argue that Plaintiffs / Counterclaim-Defendants had a duty to mitigate the losses they claim to have incurred.  Affirmative Defense Defendants argue that Plaintiffs / Counterclaim-Defendants claims are barred: "by the doctrine of avoidable consequences to the extent Plaintiffs [were employees]. . . because [they] could have corrected errors in [their] wage payments by reporting them so that 21 Group, Inc. could have corrected them promptly," (affirmative defense twenty-seven); for failure "to exhaust internal remedies to receive alleged unpaid wages or to otherwise exercise reasonable diligence to mitigate [their] alleged damages, if any," (affirmative defense thirty-two); "due to [Plaintiffs / Counterclaim-Defendants'] failure to mitigate damages or to use reasonable care to prevent any damages from being incurred," (affirmative defense thirty-four); and because "Plaintiffs never gave 21 Group, Inc. notice that any such expenses were incurred, [they] did not request reimbursement for such expenses from 21 Group, Inc., and 21 Group, Inc. was, at all relevant times, unaware that such expenses had been incurred," (affirmative defense forty-four).  (Affirmative Defenses ¶¶ 27, 32, 34, 44.)

In all of these affirmative defenses, Affirmative Defense Defendants argue that Plaintiffs / Counterclaim-Defendants had a duty to mitigate the losses they claim to have incurred by raising the losses with 21 Group and requesting reimbursement.  These defenses present unresolved factual questions (did Plaintiffs / Counterclaim-Defendants exhaust internal remedies to receive unpaid wages?) and unresolved legal questions (do Plaintiffs / Counterclaim-Defendants' failure to mitigate damages bar their claims?).  The answers to those questions

would determine whether these defenses can ultimately be successful.  Therefore, it would be premature for the Court to strike these defenses at this time.  Accordingly, the Court denies Plaintiffs / Counterclaim-Defendants' motion to strike the twenty-seventh, thirty-second, thirty-fourth, and forty-fourth affirmative defenses.

### 11.   Thirty-sixth and thirty-seventh affirmative defenses

Affirmative Defense Defendants argue in the thirty-sixth and thirty-seventh affirmative defenses that Plaintiffs' damages are de minimis.  In the thirty-sixth affirmative defense Affirmative Defense Defendants state that "Plaintiffs' claims are barred under the the de minimis doctrine of *Anderson v. Mt. Clemens Pottery Co.*, 328 U.S. 680 (1946)."  (Affirmative Defenses ¶ 36.)  In the thirty-seventh affirmative defense Affirmative Defense Defendants state that "Plaintiffs' claims are barred because any damages are *de minumus* [sic] and/or nominal."  (*Id.* ¶ 37.)  According to the *de minimis* doctrine, employers may "disregard, for purposes of the FLSA, otherwise compensable work 'when the matter in issue concerns only a few seconds or minutes of work beyond the scheduled working hours.'"  *Singh v. City of N.Y.*, 524 F.3d 361, 370–71 (2d Cir. 2008) (quoting *Anderson*, 328 U.S. at 392).  The *Singh* court upheld a district court judgment finding that the plaintiffs' commuting time was not compensable under the FLSA because it was de minimis to consider "the additional commuting time" for certain employees as opposed to others.  *Id.* at 371.

Plaintiffs / Counterclaim-Defendants allege that they "frequently work more than forty (40) hours per workweek," and are not compensated for overtime and do not receive any compensation whatsoever from Defendants.  (Am. Compl. ¶ 77.)  A number of the Plaintiffs / Counterclaim-Defendants have worked for Defendants for multiple years.  (Am Compl. ¶¶ 27–42.)  Plaintiffs / Counterclaim-Defendants' allegations regarding the hours that they were unpaid or hours that they worked and did not receive overtime pay clearly amount to more than a "few

seconds or minutes of work," and therefore, the *de minimis* doctrine does not apply.  *See, e.g.,*

*Deac v. Il Postino, Inc.*, No. 12-CV-5952, 2014 WL 4437311, at *7 (E.D.N.Y. Aug. 15, 2014)

(finding that the de minimis doctrine did not apply where plaintiffs' hourly estimates were

significantly more than a few seconds or minutes of work), *report and recommendation adopted*

*as modified*, No. 12-CV-5952, 2014 WL 4437314 (E.D.N.Y. Sept. 8, 2014).  Allowing these

affirmative defenses to proceed would unduly prejudice Plaintiffs / Counterclaim-Defendants by

requiring them to litigate defenses that are clearly incorrect as a matter of law.  *See, e.g.*, *Estee*

*Lauder*, 189 F.R.D. at 272 (explaining that when "the defense is insufficient as a matter of law,

the defense should be stricken to eliminate the delay and unnecessary expense from litigating the

invalid claim" (citation omitted)).  Therefore, the Court grants Plaintiffs / Counterclaim-

Defendants' motion to strike Affirmative Defense Defendants' thirty-sixth and thirty-seventh

affirmative defenses asserting defenses that Plaintiffs' damages are de minimis.

### 12.  Forty-ninth and fiftieth affirmative defenses

Affirmative Defense Defendants state affirmative defenses challenging the legality of

various worker protection statutes and regulations.  These affirmative defenses state: "Plaintiffs'

claims are barred because the present test . . . to determine employee and employer status, and in

particular to differentiate employees from independent contractors or non-employees, violates

the First Amendment and the Due Process Clauses of the Fifth and Fourteenth Amendments to

the United States Constitution," (affirmative defense forty-nine); and "Plaintiffs' claims are

barred because the regulations promulgated by the United States Department of Labor under the

Fair Labor Standards Act are invalid for numerous and various reasons," (affirmative defense

fifty).  (Affirmative Defenses ¶¶ 49, 50.)

These affirmative defenses present legal challenges to the underlying statutes and

regulations that Plaintiffs / Counterclaim-Defendants bring their claims under.  The Second

Circuit has endorsed the view that "[e]ven when the defense presents a purely legal question, the courts are very reluctant to determine disputed or substantial issues of law on a motion to strike; these questions quite properly are viewed as determinable only after discovery and a hearing on the merits." *Salcer*, 744 F.2d at 939 (quoting 5 Charles Alan Wright & Arthur R. Miller, Fed. Practice & Proc. § 1381 at 800–01). Therefore, it would be inappropriate for the Court to determine these legal challenges at this juncture. Accordingly, the Court denies Plaintiffs / Counterclaim-Defendants' motion to strike Affirmative Defense Defendants' forty-ninth and fiftieth affirmative defenses asserting legal challenges to the worker protection statutes and regulations pursuant to which Plaintiffs / Counterclaim-Defendants' bring their claims.

## III. Conclusion

For the foregoing reasons, the Court grants in part and denies in part Plaintiffs / Counterclaim-Defendants' motion to strike the affirmative defenses. The Court grants the motion to strike as to the third, twenty-fifth, thirty-fifth, thirty-sixth, and thirty-seventh affirmative defenses. The Court denies the motion to strike as to all other affirmative defenses.

Dated: September 8, 2023
       Brooklyn, New York

SO ORDERED:

                                                  /s/ MKB
                                                MARGO K. BRODIE
                                                United States District Judge